IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KIMBERLY DIANE FORTH ) | |
| ) | |
| v. ) | No. 3:13-0873 |
| ) | Judge Campbell/Bryant |
| SOCIAL SECURITY ADMINISTRATION ) | |

To:   The Honorable Todd J. Campbell, District Judge

### REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's application for disability insurance benefits and supplemental security income, as provided under the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 17), to which defendant has responded (Docket Entry No. 21).[1] Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 13),[2] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

### I. Introduction

Plaintiff filed her claims to disability insurance benefits and supplemental

---

[1]Despite seeking and obtaining permission to file a reply brief (Docket Entry Nos. 24 & 25), plaintiff has not filed any such reply.

[2]Referenced hereinafter by page number(s) following the abbreviation "Tr."

security income on October 22, 2009 and February 9, 2010, respectively, alleging that she became disabled on October 16, 2009 , as a result of her degenerative disc disease with radiculopathy due to sciatica, and diabetic neuropathy. (Tr. 132-43, 168-69). Her claims were denied at the initial and reconsideration stages of state agency review, whereupon plaintiff filed a request for *de novo* hearing and decision by an Administrative Law Judge (ALJ). Prior to the hearing, plaintiff amended her alleged onset date, to June 9, 2010. An administrative hearing was held on December 6, 2011, at which plaintiff appeared with counsel. (Tr. 27-55) Plaintiff testified, as did an impartial vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement, until March 27, 2012, when she issued a written decision in which plaintiff was found to be not disabled. (Tr. 14-21) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

2. The claimant has not engaged in substantial gainful activity since October 16, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: lumbar degenerative disc disease and lumbar spondylosis, diabetic polyneuropathy, diabetes mellitus and hypertension (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can lift/carry up to 20 pounds occasionally and 10 pounds frequently; she can stand/walk up to two hours in an eight hour workday with normal breaks; she can sit for up to

six hours with normal breaks in an eight hour workday; she can push/pull up to 20 pounds occasionally and 10 pounds frequently with her bilateral upper extremities; she can occasionally push/pull and operate foot controls within the above weight limitations; she can occasionally climb stairs, frequently climb ramps and never climb ladders, ropes or scaffolds; she can occasionally balance, stoop, kneel, crouch or crawl; she is limited to occasional exposure to vibrations; she can understand and remember simple and detailed instructions; she is capable of maintaining concentration, persistence and pace in two hour segments with normal breaks; she can have frequent contact with the public and coworkers for task completion.

6. The claimant is capable of performing past relevant work as a billing clerk. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from October 16, 2009, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 16-17, 20)

On July 2, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-6), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following summary of the record is taken in large measure from defendant's brief, Docket Entry No. 21 at 4-7.

A. Age, Education and Work Experience

Plaintiff, born in November 1968 (Tr. 132), was 41 years of age at the time of her alleged onset of disability on October 16, 2009, and would be classified as a "younger person" under the disability regulations. See 20 C.F.R. §§ 404.1563 and 416.963. Plaintiff had a high school GED equivalent education, without attending any special education classes, and graduated from a college pharmacy technician program in 2007, but let her license expire (Tr. 34, 169).

Plaintiff last worked right before her alleged disability onset in September-October 2009 as a warehouse packer and tester of printers, which required lifting up to 100 pounds with frequent lifting of 50 pounds (Tr. 170, 182-185). She worked at this job for 8 hours per day for 5 days a week even though she explained in her disability work history form that "she knew she could not lift" but took the job to provide for her children (Tr. 185).

Previously, plaintiff worked from January 2005 to May 2006 as a billing clerk for a vascular surgeon, which required only the handling of small objects (Tr. 35, 182-183). From 1992 to 1994, she had worked as an insurance company claims specialist, which required lifting of mail tubs (Tr. 35, 182-184).

B. Additional Testimonial Evidence

Plaintiff testified at the December 2011 administrative hearing that she lives with her husband and two sons, aged three and nine years old (Tr. 33). She testified that the biggest issue that keeps her from working is back pain radiating down a leg making her unable to sit or stand very long (Tr. 36). She further testified that she followed all her medical providers instructions and that she has been able to get all medical care and treatment suggested under Tenncare (Tr. 36). As noted *supra*, in a pain questionnaire dated

4

March 13, 2010, plaintiff indicated that her alleged lower and middle back pain began in middle school (Tr. 190). She also testified that she did not understand why her new physician at Pain Management Group, whom she has seen for 3 months, cut in half her pain medication (Tr. 37-38). Her new physician recommended a steroidal nerve block, which she could not schedule until her diabetes was under control (Tr. 38, 47). She has sciatica that flares up once a month depending on how much walking she has to do (Tr. 46).

Plaintiff also testified that she has had diabetes since 1996 (Tr. 44). She further testified that due to neuropathy "for the most part I can't feel my feet" and that she is not sure if this is due to diabetes or to her back problem (Tr. 41-42).

Plaintiff also testified that she has never been treated for, or taken any medication for, depression, anxiety, or other mental health issue (Tr. 44-45). She smokes a pack a day, but has no problems with asthma or pulmonary issues (Tr. 47).

As for daily activities, plaintiff testified that she was responsible for taking care of her 3-year old child (Tr. 43). She cannot walk up a flight of steps without hurting (Tr. 44). In a pain questionnaire, plaintiff related that she goes grocery shopping and has to clean house, but it is hard to use a vacuum (Tr. 191). In a fatigue questionnaire dated July 17, 2010, plaintiff related that she has no difficulty caring for her own needs, prepares and cooks meals, drives a car to grocery shop once a week, does household chores with breaks, and goes out of the house daily and visits neighbors (Tr. 211-212).

C. Vocational Expert Testimony

Ms. Nancy Hughes testified as a VE at the hearing (Tr. 48-54). The VE testified that plaintiff's past relevant work (PRW) as an insurance company claims examiner was skilled and sedentary, her work as an electronics tester was light and semi-skilled, and her

5

work as a billing receptionist clerk was sedentary and semi-skilled with a specific vocational preparation (SVP) level of 4 and a <u>Dictionary of Occupational Titles</u> (DOT) code number of 214.382-014 (Tr. 49).

The ALJ then asked the VE to assume a hypothetical person of plaintiff's age, education, and work experience with an RFC of medium level exertion (Tr. 49-50). The VE testified such a person could perform all of plaintiff's PRW (Tr. 50). The ALJ then asked the VE to further assume that such a hypothetical person could only understand and remember simple and detailed instructions, could sustain attention and concentration in 2-hour segments over an 8-hour day with normal breaks between each segment, and could have only frequent contact with the public and co-workers. Id. The VE testified that such an individual could perform plaintiff's PRW as an electronics tester and billing clerk receptionist, but not as a claims examiner (Tr. 50-51).

The ALJ then asked the VE to further assume that such a hypothetical person could only perform sedentary work with an ability to stand/walk up to 2 hours and sit up to 6 hours in an 8-hour day and with other further restrictions in the ALJ's established RFC (including the non-exertional restrictions) (Tr. 51-52). The VE answered that such an individual could only perform plaintiff's PRW as a billing clerk receptionist. Id.

In addition, the VE testified that the hypothetical person could not perform plaintiff's PRW, or any other work, if the hypothetical person was additionally restricted to sustaining attention and concentration in 1-hour segments with a 3-5 minutes break between segments (Tr. 52-53).

Lastly, the VE testified that no jobs would be available if the hypothetical person would be capable of sitting for only 2 hours in an 8-hour day and would need to

either lie down or recline for the remainder of the day with alternate sitting and standing as necessary for pain (Tr. 53).

The VE further stated her testimony is consistent with the DOT (Tr. 54).

### D. Medical Evidence

Plaintiff gives a short summary of the medical evidence in her brief (Docket Entry No. 18 at 3-4), as follows:

The Plaintiff has severe impairments that include lumbar degenerative disc disease and lumbar spondylosis; diabetic polyneuropathy; diabetes mellitus and hypertension. R. 16.

The amended onset date of June 9, 2010, relates back to the date of the first MRI completed at Middle Tennessee Medical Center by Dr. Scott Eller. Mrs. Forth is treated for lumbar disk degeneration, lumbar spondylosis and diabetic polyneuropathy. She complains of lower back pain; left leg pain and right foot pain. She describes her pain as a 5/10 with medication. She is prescribed Lisinopril, Maxalt, Tramadol, Lyrica and Simvastin. Her blood sugar runs in the 200s despite medication management. She complains that the medications are causing drowsiness.

She is 5'8" and weighs 182 pounds. She has taken Neurontin, Ultram, and Lyrica in the past with no relief. A steroid injection was recommended but her diabetes prevents her from pursuing this. See notes dated October 6, 2011. The MRI dated September 21, 2011 revealed a posterior bulge at L5-S1 with a left posterior parasagittal disc protrusion; bilateral facet arthropathy and grade I anterolisthesis of L5 on S1 related to bilateral L5 pars defect. This is comparable to the study done on June 9, 2010.

Dr. Scott Eller treated the claimant for several years before he ultimately

referred her to Pain Management. (R. 249-264 and R. 297-305). She has been compliant with her medication plan. She does not use drugs or alcohol.

On June 3, 2010, Dr. Eller diagnosed diabetes mellitus, type II, with neurological manifestations; not uncontrolled; hypertension; neuropathy; migraine headaches; edema; low back pain; radiculopathy and degenerative disc disease. (R. 303)

The claimant has also been to the Middle Tennessee Medical Center emergency room numerous times since June 2010. She has been treated for uncontrolled blood sugar; pain in her back and legs and swelling and numbness in both legs. She must elevate her legs to relieve some of the swelling.

Records from the Pain Management Group show assessments of diabetes mellitus, poorly controlled; sacroiliitis; lumbar disc degeneration; lumbar spondylosis; diabetic polyneuropathy; and lumbar radiculopathy. Physical examinations have revealed tenderness on palpation; muscle spasms; and limited range of motion in the lumbar spine. The claimant has undergone medial branch nerve blocks. (R. 415-432) The Pain Management Group does not complete Medical Source Statements and referred her for an FCE. (R. 418). The cost ($1,200) prohibited her from obtaining the evaluation.

The medical evidence is further discussed as pertinent below, in support of the undersigned's conclusions of law.

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that

agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

## B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

    1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

    2) A claimant who does not have a severe impairment will not be found to be disabled.

    3) A finding of disability will be made without consideration of vocational

factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.

4) A claimant who can perform work that he has done in the past will not be found to be disabled.

5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined

effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff first argues that the ALJ erred in finding that she retained the capability to perform sedentary work. Plaintiff's argument on this front is extremely conclusory, without reference to particular items of medical or other evidence of record, or to pertinent legal authority. To wit:

> The ALJ assigned the claimant a sedentary RFC. This is overly optimistic and is not supported by the record as a whole. Certainly someone with severe degenerative disc disease and spondylosis as well as diabetic polyneuropathy would be unable to sit for up to 6 hours in an 8 hour workday. The ALJ erred by failing to consider the impact that her pain would have on her ability to sustain full-time work. ... The mental limitations in the RFC should prevent her from performing [her] past relevant work. . . .

(Docket Entry No. 18 at 6)

Contrary to these general objections, the ALJ gave due consideration to the credible extent of pain which plaintiff endures, partially accepting such allegations to the extent that the only medical assessments of record which spoke to plaintiff's functional abilities -- those offered by the nonexamining state agency consultants -- were discounted because they determined that plaintiff was capable of medium exertional work. (Tr. 20) While plaintiff notes that, due to her lack of funds, she was unable to purchase an independent functional capacity evaluation when her treating providers at the Pain Management Group refused to provide one, the undersigned does not see the relevance of this item to the instant review. See Her v. Comm'r of Soc. Sec., 203 F.3d at 391 ("If a

11

claimant does not secure an official "Residual Functional Capacity" assessment by a medical or psychological examiner, and simply relies on other evidence to prove his impairments, it does not follow that the Commissioner subsequently must provide the RFC assessment...."). Despite plaintiff's offering that her impairments and limitations should certainly preclude sedentary work, the undersigned finds no error in the following resolution of the matter by the ALJ:

> While there is some evidence of lumbar degenerative disc disease and spondylosis, the record does not support the allegation that these impairments prevent the claimant from working. First, her lumbar magnetic resonance image (MRI) in June 2010 showed only grade I vertebral anterolisthesis at L5 on S1 and only moderate neural foraminal narrowing. The disc bulge at the L5-S1 vertebral level is small with no nerve root displacement. A repeat lumbar MRI performed on September 21, 2011 was largely unchanged. When the claimant started her pain management in August 2010, she reported that her pain prevented good sleep, home chores and walking/exercise. Later she reported Tramadol worked remarkably well and by February 2012, she reported that her medicines allowed her to sleep better and do house chores. Although the claimant has reported an increased pain level, no objective medical evidence in the record supports a worsening of her condition. The claimant's pain is not limiting enough to prevent sedentary work. The claimant did report some drowsiness and short-term memory loss from her pain medication, which I properly considered in the residual functional capacity.
>
> The claimant also has diabetic polyneuropathy, which causes numbness in her feet; however, her neuropathy is not limiting enough to prevent sedentary work. Significantly, the claimant testified that her neuropathy is worse when lying down at night, not when standing or sitting. Since the tingling in her feet may still affect her balance, however, she is limited to occasional operation of foot controls, stair climbing, balancing and never climbing ladders, ropes or scaffolds. Despite her neuropathy, the claimant can perform sedentary work within the limits listed above.

(Tr. 18-19)

Plaintiff next argues that the ALJ erred in failing to find, at step two of the sequential evaluation process, that plaintiff's severe impairments included migraine headaches, diastolic heart failure, and trochanteric bursitis, and further in failing to explain why these impairments were not found to be severe. As regards the diastolic heart failure, the ALJ did in fact properly explain her consideration of this impairment, as follows:

> Scott Eller, M.D., the claimant's family physician[,] diagnosed diastolic heart failure based on an echocardiogram (ECG). However, the cardiologist, Selcuk Tombul, D.O., who performed the exam, reported that the ECG was unremarkable and did not require any medical treatment. Thus, the claimant's only effect from her heart failure seems to be her hypertension, which is properly accounted for with sedentary work.

(Tr. 19) Furthermore, plaintiff cites to no evidence in the record for the proposition that her migraine headaches or trochanteric bursitis were in fact medically severe for purposes of step two. The burden lies with the disability claimant to establish the severity of her impairments. Her, 203 F.3d at 391. The record in fact establishes that plaintiff's headaches are not intractable (e.g., Tr. 303) but -- per her testimony -- are responsive to prescribed medication (Maxalt) and occur only "a couple times a month." (Tr. 46) As to the diagnosed left greater trochanteric bursitis, it appears that this condition and the resulting hip pain was diagnosed once, on August 30, 2010 (Tr. 403-05), and was noted to be resolved at plaintiff's next scheduled appointment, on September 30, 2010 (Tr. 399-401). Plainly, the ALJ did not err in his consideration of plaintiff's severe impairments.

Plaintiff next argues that the ALJ erred in minimizing her lumbar back disorder, as follows:

> The ALJ mentioned the June 2010 MRI and the September 2011 MRI. A review of the September 2011 MRI shows that the MRI revealed stenosis. There was no stenosis found on the June 2010 MRI. However, when the ALJ

13

> discussed the September 2011 MRI she merely stated that the results were largely unchanged from the results on June 2010. A review of the two imaging studies clearly showed that the claimant's lumbar spine conditioned had worsened since the prior imaging study. . . . A review of the evidence shows that this was an inaccurate statement.

(Docket Entry No. 18 at 7-8) In fact, however, the June 2010 MRI revealed "moderate bilateral neural foraminal narrowing" –- stenosis, by another name[3] -- which by September 2011 had become "mild" on the right, and "mild to moderate" on the left. (Tr. 387) If anything, then, the condition had slightly improved rather than worsening. The ALJ rightly deferred to the radiologist's interpretation that "[w]hen compared to the prior study, the above findings are largely unchanged." (Tr. 387)

As to plaintiff's claim that the ALJ minimized her condition by reference to her failure to schedule epidural steroid injections once her blood sugar was under control, the fact that she ultimately received lumbar nerve blocks after her hearing before the ALJ (Tr. 422-32) was duly recognized in the ALJ's decision (Tr. 19), and does not affect her observation that plaintiff would be still be expected to pursue the epidural steroid injections her physicians recommended for relief of her symptoms, if they were truly disabling.

Lastly, plaintiff takes issue with the ALJ's finding of her partial credibility, based on her weighing plaintiff's ability to afford cigarettes against her professed inability to afford more than the five medications covered at one time under her insurance. Plaintiff states that "[t]he ALJ erred by assuming that she buys her own cigarettes. She failed to take

---

[3]"Spinal stenosis is narrowing of the spinal column that causes pressure on the spinal cord, or narrowing of the openings (called neural foramina) where spinal nerves leave the spinal column." http://www.nlm.nih.gov/medlineplus/ency/article/000441.htm

14

into account the possibility that someone else buys cigarettes for the claimant." (Docket Entry No. 18 at 8-9) However, plaintiff cites no evidence that plaintiff's cigarette habit is funded by anyone else. This argument is specious.

The remainder of plaintiff's challenge to the ALJ's credibility finding is nothing more than boilerplate argument, much of which has no application to the instant case, such as the unfounded assertion of error "[s]ince the ALJ did not specifically state whether she found the claimant's testimony credible or not credible, and since [s]he did not specifically state the amount of weight [s]he assigned to that testimony[.]" Id. at 11. In fact, the ALJ in this case gave a very thorough explanation of the reasons why she found plaintiff's testimony only partially credible, to the extent it was consistent with the ability to perform the range of sedentary work assigned as plaintiff's RFC. (Tr. 18-20) That explanation need not be restated here. An ALJ's credibility determination is due considerable deference on judicial review, particularly since the ALJ, unlike the Court, has the opportunity to observe the plaintiff while testifying. E.g., Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). Plaintiff has offered no reason at all to set aside the credibility finding in this case.

In sum, the decision of the ALJ is supported by substantial evidence on the record as a whole, and is therefore due to be affirmed.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's

motion for judgment on the administrative record be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 26th day of February, 2015.

    s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE